Good morning. May it please the Court, Michael Carroll appearing on behalf of the Appellant Northwest Administrators in this case. Your Honor, my client represents and acts as Administrator for the Western Conference of Teamsters Pension Trust Fund, which is a multi-employer, a RISA-regulated fund, providing pension benefits in the Western states to persons who are entitled to them by virtue of collective bargaining agreements between local unions and employers. There are 29,000 participants in the Teamster Pension Trust who are entitled to fringe benefit contributions during periods of workman compensation. And the issue before the Court below and now is whether or not contributions are due on behalf of workman's compensation in this specific case. The only legal decision that's dealt with it involved the United Parcel Service back in New York, and it really isn't very helpful here because it doesn't tell us what language was in that contract. But it's very typical for, for example, UPS employees to be covered. The garbage industry, as we all know, is an extremely hazardous one and can result in injuries on a repeated basis over a career. We don't see too many gray-haired people out there operating these trucks or putting things into them. And so the issue here is whether or not this particular Teamster's Local 350, in drafting its contract back in 1996 and the subsequent agreements thereafter, in its Section 4, was successful in requiring San Bruno Garbage to pay fringe benefits when an employee was out on workman's compensation. It was, of course, our position below, having had performed an audit on this particular employer back in 2005, that they did have such an obligation. The employer appealed through various processes that the trust has because it objected and did not feel that it was bound to pay those contributions. Each of the appeals inside the Teamster Pension Trust apparatus, from the administrator up to the Board of Trustees, resulted in adverse decisions. And we're here today because the trial court devised, in its opinion, we feel, an erroneous approach to the case, resulting in a definition of the term, compensable hour, which limited recovery or payment obligations of an employer to only those wages or contributions or other benefits that the employer directly paid to the employee. This results from an assumption on the part of the trial court that San Bruno was not required to pay workman's compensation payments directly to its employees when they were injured. Well, who did pay the payments? That is not known, Your Honor. Judge Goodman, there are two ways this is handled in California. A company can self-insure and or it can have an insurance policy. Insurance, yes. And in this case, we have no evidence before the court. The court did not make those inquiries. It simply issued this decision. Well, if a worker is off on sick or injured leave and is being paid by a private insurance company or a state industrial accident fund or something in some states, the employer is not making those payments, so why would there be a duty to pay into the pension fund on those payments? Your Honor, we believe that Section 4 of the contract required the employer to make contributions on behalf of these employees for any benefits. But the hours worked or hours... Well, it would not be hours worked, of course, because the employee is injured. Hours are not worked. Your position seems to me, just speaking for myself, is counterintuitive. If there is compelling language and this was bargained for in the contract, then it would be a different thing, I suppose. So the language in the contract that you're... There are only two places where the term compensable hour is used in the contract. And it doesn't purport to define the obligation of the employer with regard to workman's compensation. It's our position that Mr. Morales added Section 4 to the contract and made the pension provision a subset of that, along with the health and welfare provision, which was also a subset of that contract. And he was trying to deal with the issue of when employees would receive contributions during workman's compensation or illness or disability. And it was a clarifying provision is the way we look at it. When the court jumped outside the record and said there is no evidence here that Sam Bruno paid during workman's compensation as a self-insurer, it's our belief that the court should have also jumped outside the record and considered the declaration of Mr. Morales, which explained in some detail how this language was developed, how it came into being in 1996, how he lifted it out of another garbage contract, which was the NorCal garbage contract, which is the contract at the time here in San Francisco. And NorCal actually was paying fringe benefits when people were on workman's compensation. And according to the Morales declaration, they were paying workman's they were paying into a 401K plan instead of our pension plan in San Francisco using this very same language. The court completely ignored this declaration, and we feel that the court had a duty to address it and respond to it and consider this evidence of intent. And that there are plenty of cases dealing with that issue and the inferences that should be drawn, for example, here on appeal with regard to that evidence. And we feel that the court should hold a full evidentiary hearing on the terms and conditions of the contract and any witnesses who were there for the negotiations, including Mr. Morales. There's plenty of case authority, of course, along those lines. Northwest v. Albertsons, which is a case involving my client. There's a case, Northwest v. Beebe, which the court actually referred to in its decision, which is favorable on the issue of determining what the collective bargaining parties meant, both by the usage and where the language came from and also by their actions. Where do I find the affidavit? I'm sorry. The affidavit of Mr. Morales. Yeah, I see. I see. I've got it. You've got it, Your Honor? Yeah. The court, in its discussion of the case and in the argument, and the court, in its opinion, makes no reference to the Morales declaration. The court did make plenty of references to, well, perhaps her impatience with the language of the contract at Excerpt of Record 42 and back at Excerpt of Record 27. She described the contract as messy and unclear. She had many questions about Workman's Compensation and how it operated. And Judge Goodwin, I must confess, already knows more about it than she professed to at the time of the hearing. But the court, once it went outside the record and engaged in the supposition that the employer was not paying anything during a period of Workman's Compensation, I believe, delved in an area where there should have been a further investigation. If the court actually wanted that information, the court should have asked us all to come back or provide some additional data. And the only information outside the record the court had was Judge Schroeder, the declaration that you just referred to of Mr. Morales. Yeah. Well, see, my problem is that I've looked at this again, and it appears to be his understanding. And the law, and he was negotiating on behalf of the union, I guess. That's correct, Your Honor. And I don't, I'm not quite sure I understand where we get the parties, both parties' understanding of what this meant. The other side did not produce any evidence in that regard. There was a Mr. Savanovich, I believe I'm pronouncing his name correctly, who negotiated the contract at that time. And the entity, San Bruno Garbage, was a subsidiary, as I understand it, or somehow corporately related to NorCal, which is, again, the garbage company here in San Francisco. And the language that was used was lifted from the NorCal contract. So there was a history and an understanding here. And that language is the Compensable Hours language? I beg your pardon? That language is the Compensable Hours language? No, that language is the Section 4 language, which is at excerpt of record, page 111. And we think it's very important for the Court to consider the fact that Section 4 at excerpt 111 has some subsections to it. And one of them is health and welfare. And let's go back. Maintenance of benefits, the Section 4 section is dealing with trying to And it's describing that, well, you're going to get your health and welfare for a certain period of time. You're going to get any benefits under this contract. And then later on, it mentions workman's compensation. And you're going to get it until the workman's compensation proceeding is concluded, any benefit. Is that Section 4B of that amended, of that letter of understanding? No, Your Honor. I'm actually referring to the contract itself, the entire collective bargaining agreement. But there's some language somewhere in there about time paid for but not worked. Yes, Your Honor. Such as holiday, vacation, sick pay shall be considered as time worked. Yes, Your Honor. You're referring to a letter of understanding, and that is at excerpt of record 120. The Court asked me below whether or not we thought that the language Judge Goodwin just referred to did or did not provide for pension contributions on a workman's compensation time. And my response then and now is that, no, it didn't actually provide for it. However, it didn't exclude it. The language is demonstrative in the very last sentence that is important, time paid for but not worked, such as holiday vacation, such as holiday, vacation, and sick pay. So it's our position that you look back to the contract itself to find the language where there is an obligation created to pay on work comp. That is at excerpt 111. And, again, the important point I'd like to make to the Court is, from a drafting point of view, if you're going to set forth this obligation at section 4 and then have a subsection dealing with health and welfare and a subsection dealing with pension, which is two page laters and two pages later in the contract, at excerpt of record 113. Then this is one of the benefits we contend that Mr. Morales is referring to when he inserted section 4 back in 1996. If there are no other questions, I'd like to reserve the balance of my time of approximately two minutes. Thank you, Your Honor. Good morning. May I please the Court, Nancy Ober, for the appellee San Bruno Garbage Company. San Bruno was a contributing employer under the Western Conference of Teamsters Pension Trust Fund, and the question before the Court was whether it had an obligation based on its collective bargaining agreement with the Teamsters to contribute for time when its compensation leave. And I submit to the Court that it is very clear from the collective bargaining agreement itself that no such obligation existed. The contribution obligation of the employer here in this contract is spelled out in section 4B, which requires the employer to pay contributions to the trust on the basis of straight time hours, and starting with the first compensable hour. Now, the letter of understanding that the parties executed subsequent to the collective bargaining agreement sheds light on what is a compensable hour. That's not only time worked on the job, but also other types of hours, time off, where the employer had a contractual obligation to make payments to the employees. And while that, Mr. Carroll It says holiday vacation and sick pay, but it's Right. But that's, those are examples. Right. But there are other provisions of the collective bargaining agreement which also obligate the employer to make contributions such as for funeral leave. So that language that you just referred to, Judge Schroeder, may not have been Exclusive. Exclusive, but those are examples, all of them, of time when the employer, on an hourly basis, made contributions into the pension trust fund. And so it's clear that the types of hours, or the types of, the obligation of the employer was to make payments based on hours worked, or essentially for wage substitutes when the employees were off work, but there was an obligation under the collective bargaining agreement to make those payments. And we think that the language of the collective bargaining agreement is totally unambiguous. There was no reason to refer to, certainly to extrinsic evidence, or, and there's no other provision of the collective bargaining agreement that bears on the employer's obligation. This so-called, I guess, maintenance of benefits provision, the first paragraph, refers to due to disability or workers' compensation leave. But the language of that section is talking about benefits paid or due to the employee. It's not addressing contributions by the employer to the trust fund. Does it make a difference here, as suggested by your adversary, as to whether or not there was, this was a self-insured workers' comp, or whether there was insurance that was paying for it? I don't believe it does, Your Honor. But there's certainly no evidence whatsoever in the record that this employer ever did self-insure. And if it did, that its obligation on self-insurance would be measured by hours worked or a substitute for hours worked, or that the parties ever treated workers' comp leave as compensable hours under the contract. And that's a major difference, for example, from the Albertson's case, where it was very clear that the types of the overtime or possibly, I think there was a dispute over the stop pay, were types of work, I mean, actual work, or where there's no dispute as to whether the employer had an obligation to contribute or to pay the employee's director. Also, that section of the first paragraph of Section 4, it talks about benefits due to the employee, not payments to the trust fund. And the, while the appellant, Northwest, has argued that the language, any benefit, must be read to include, quote, benefits to contributions by the employer, I think the rest of that section, including particularly Section A, or subsection A, health and welfare, clearly distinguishes between benefits and contributions. There's no basis in this collective bargaining agreement on the face of it to say that the words benefit subsumes contributions. Otherwise, it would not be possible to read, you know, sensibly, sections, for example, subsection A, 7 and 8, which require the employer to make premium payments or contributions to maintain benefits provided under the health and welfare plan. So our position is simply that the first paragraph has no bearing on the employer's obligation to make pension contributions. What do you say about the, the appellant's brief points out that NorCal and San Bruno were kind of related companies, and it wasn't NorCal reading the same language as requiring payments to the pension fund? There's no evidence of that in the record, I think, Your Honor. And I think the, in terms of the bargaining history, and certainly Mr. Morales's declaration is essentially his view years later of what the, what he intended by adding, he says, that language in the first paragraph of the, of Section 4. And I think, and again, this, this Court's view is that it would be unfair to refer to one party's view of what the collective bargaining negotiations produced or what the rationale of the parties was. If there had been a history of making these payments over several years, wouldn't that lend some credence to Mr. Morales's interpretation? If by this employer, and there is no, there is no evidence that this employer, San Bruno Garbage, ever did so. And in fact, the evidence is to the contrary. In the prior audit for 2004, which covered a three-year period, there was apparently one situation where a payment was made on behalf of an employee who was on workers' comp leave, which was mistakenly applied to him rather than to another employee who was actively employed. And during that period of time, the trust, or Northwest Administrators, reallocated the money based on the showing of mistake. I remember running across that item, yeah. Pardon? I ran across that item in the record. And so in our view, there's no basis for turning to extrinsic evidence because the contract in itself and on its face is clear, as the district court concluded. Any other questions? Thank you. Thank you. Your Honors, in less than two minutes. The connection with NorCal, Your Honor, is made by the declaration of Mr. Morales at Excerpt of Record 59, where he mentions that he took it from the NorCal contract and respectfully requesting the Court to take judicial notice. NorCal is mentioned there at 59, line 9. In the answering brief, the corporate disclosure statement that was filed by San Bruno specifically admits to the connection to NorCal systems, so we would ask you to take judicial notice of that. And I would have to point out the importance of whether or not there was self-insurance here. And it does mean we have to go outside the record, because if there was self-insurance by San Bruno, then San Bruno would be paying a wage equivalent, as counsel has used that phrase, to the employee, and therefore we would feel that pension contributions would be due. But that takes us outside the record. It takes us outside the four corners of the contract, and it brings in facts that are extrinsic and that need to be dealt with. And, Your Honor, Judge Goodwin, counsel is correct. In that prior audit, we did make a change, and we considered that to have been a mistake. And there was no record that we're aware of of San Bruno paying contributions on workman's compensation. However, we believe that we were denied the right to provide the extrinsic evidence in the court below. And laborers versus Kaufman and Broad is an excellent case dealing with issues such as this, where there's contract language that is ambiguous, and the court below has to consider affidavits from the parties. Thank you. Thank you. Thank you, counsel. The case just argued is submitted for decision.
judges: Goodwin, Schroeder, Hawkins